**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION, AT DAYTON**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| Plaintiff, | : | **CASE NO: 3:19-CR-00169** |
| vs. | : | **Judge Thomas M. Rose** |
| **ETHAN KOLLIE** | : | |
| Defendant. | : | |

---

**SENTENCING MEMORANDUM**

---

Now comes the Defendant, ETHAN KOLLIE, by and through counsel, and respectfully submits the attached memorandum for the Court's consideration at the Sentencing Hearing.

       Respectfully submitted,

       s/ Nicholas G. Gounaris
       Nicholas G. Gounaris No. 0064527
       Gounaris Abboud Co. LPA
       130 W. Second St., Ste. 2000
       Dayton, Ohio 45402
       Telephone (937) 222-1515
       Facsimile (937) 222-1224
       E-Mail nick@gafirm.com

# MEMORANDUM
# PROCEDURAL HISTORY

On November 20, 2019, Ethan Kollie appeared in the United States District Court for the Southern District of Ohio in Dayton and entered guilty pleas to both counts of the Information:

**Count 1**: Possession of a Firearm by a Person who is an Unlawful User of or Addicted to any Controlled Substance, in violation of 21 U.S.C §922(g)(3) and §924(a)(2);

**Count 2**: Making a False Statement or Representation in the Records Required to be obtained by a Federal Firearms Dealer, in violation of 21 U.S.C §924(a)(1)(A).

# PENALTIES

Statutorily, a conviction for Count One provides a sentence of a term of imprisonment of up to 10 years, a $250,000 fine, three years of supervised release, and a $100 special assessment.

A conviction for Count Two provides a sentence of a term of imprisonment of up to 5 years, a $250,000 fine, three years of supervised release, and a $100 special assessment.

# ADVISORY GUIDELINE RANGE

The United States Probation Office has provided the Court with a non-binding, advisory guideline range based upon the following:

**Base Offense Level** found under advisory guideline §2K2.1(a)(4)(B) of **20**. An **additional 2-levels** were added pursuant to §2K2.1(b)(1)(A) for Mr. Kollie

possessing between 3-7 firearms. Finally, Mr. Kollie received a **3-level reduction** pursuant to 3E1.1 (a) and (b) for a total adjusted offense level of 19.

Mr. Kollie has two criminal history points for two separate convictions in 2013 for a minor misdemeanor possession of marijuana and a fourth-degree misdemeanor traffic "no operator's license" violation. Despite the minor nature of those two offenses, 2-points push Mr. Kollie's criminal history category II.

## APPLICABLE 18 USC § 3553(a)(1) FACTORS

Mr. Kollie understands that the court must not only consider the statutory penalties and the advisory sentencing guidelines, but that this court must also consider 18 U.S.C. §3553(a) factors prior to imposing a sentence. As such, Mr. Kollie would like the court to consider the following.

## OFFENSE CONDUCT

The Final PSR (¶17-24) provides this court with the Probation Department's version of the "offense conduct." However, Mr. Kollie objected to much of the characterization contained in those aforementioned paragraphs as it included irrelevant information that was not related to his conduct and appears to weigh heavily on an act that did not involve him. Mr. Kollie's objections can be found in the addendum to the Final PSR.

Nevertheless, Mr. Kollie takes full responsibility for his actions. Mr. Kollie admits that he has been a drug user, he admits that that he lied on the ATF form and he finally admits that he possessed firearms while he was a drug user.

However, there is more to this story. The United States has a desire to promote the tragic events of August 4, 2019, and to link those events to Mr. Kollie suggesting that he holds some type of responsibility to the Oregon District tragedy.

The FBI and other very reliable investigating agencies extensively vetted Mr. Kollie and found no link indicating that he was responsible for the planning or execution of the Betts shooting.

To the contrary, after the tragic mass shooting and killings perpetrated by Connor Stephen Betts on August 4, 2019, investigators found a receipt in Betts' car that referenced Mr. Kollie. Not knowing if the mass shooting involved other participants and not knowing the extent of the planning, investigators immediately tracked down numerous leads, including a trip to Mr. Kollie's residence within hours of the shooting.

In the early morning hours after the shooting, Mr. Kollie was met by a large number of law enforcement officers, including FBI special agents. He cooperated completely with thoroughly. The Court can imagine that in the moment of this epic tragedy, that time and information are of utmost importance, especially to law enforcement. Local, State and Federal authorities were working quickly and efficiently to gather information and to make sure there were no more threats.

Mr. Kollie was open and honest about all knowledge he had about Betts and never refused to answer any questions. He never asked for a lawyer and never denied one request from investigators. He executed a "consent to search" his residence readily handed over any information that was requested of him without

hesitation. His honesty and candor continued even when investigators asked him questions that he knew would incriminate him. Mr. Kollie was able to understand and appreciate the gravity of the situation and was able to understand how his candor would be of assistance to the investigation. Not only did Ethan speak to investigators on the early morning hours after the shooting, he met with investigators days later. Once again answering all questions and cooperating completely.

Investigators came to Mr. Kollie's home to seek answers about the shooting and to ascertain if others were involved. I'm sure at one time, some investigators may have believed that Mr. Kollie was involved. As such, they started using his candor and honesty to start building a case against him. They took his computer and other items. They asked him questions about his relationship with others, including Betts. They asked him questions relating to possession of firearms, his carry conceal permit and his honesty or lack thereof on the relevant ATF form.

When the smoke cleared, it was determined that Mr. Kollie was not responsible or involved in the tragic mass shooting. However, the United States chose to ignore his cooperation in assisting investigators, it chose to ignore his honesty and candor and chose to ignore his unquestioned cooperation. It also chose to ignore its own history in prosecuting these types of cases.

In the twenty-five years of representing individuals in this court, undersigned counsel is not aware of any federal prosecutions that involve ONLY the aforementioned charges without any other more serious accompanying charges.

In fact, the attached United States Government accountability Office Report (GAO-18-440) suggests just how rare the United States pursues these types of charges. In 2017, the ATF investigated 12,710 instances[1]. Of those 12,710 investigations only 12 cases were prosecuted by the United States (GAO 18-440, P.80; Appendix VI: Examples of Firearms Denial Cases Referred for Prosecution). Of those 12 cases, only 2 included the same specific charges found in this case (GAO 18-440, P.80; Appendix VI: Examples of Firearms Denial Cases Referred for Prosecution). Mr. Kollie is not arguing that he violated the law. He points to these statistics to suggest just how rare they are and how selective the United States is in this charging these offenses.

**CONCLUSION**

Mr. Kollie admits responsibility for his actions. He was not truthful on an ATF form and possessed firearms while he used drugs. This Court has had the benefit of the PSR, Pretrial Services and other information to rely upon to know the type of quality person Mr. Kollie is. He's made a mistake but he's has already spent months in the County Jail for his actions. Prior to his arrest he was working regularly without incident. The Court has tremendous discretion in the sentence it imposes and can consider a term of supervised release with credit for the time Mr. Kollie has served. Mr. Kollie hopes that this Court will consider such a sentence.

---

[1] Source: GAO Analysis of Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and FBI data; GAO 18-440

Respectfully submitted,

s/ Nicholas G. Gounaris
Nicholas G. Gounaris No. 0064527
GOUNARIS ABBOUD CO., LPA
130 W. Second St., Ste. 2000
Dayton, Ohio 45402
Telephone (937) 222-1515
Facsimile (937) 222-1224
E-Mail    nick@gafirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon all parties by electronic filing through the office of the clerk.

Respectfully submitted,

s/ Nicholas G. Gounaris
NICHOLAS G. GOUNARIS