UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Case No. 3:19-CR-169-TMR |
| | : | |
| **Plaintiff,** | : | **UNITED STATES'** |
| | : | **SENTENCING** |
| **vs.** | : | **MEMORANDUM** |
| | : | |
| **ETHAN KOLLIE,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |
| | : | |

-------------------------------------------------

1.  <u>Introduction</u>.

A sentence within the advisory Sentencing Guidelines range of 33 to 41 months' imprisonment would be sufficient but not more than necessary to achieve the goals of sentencing as set forth in 18 U.S.C. § 3553(a). The defendant, Ethan Kollie ("Kollie"), is a regular drug user with a penchant for firearms and a history of deceit and poor judgment. Kollie will forever be connected to the tragic events of August 4, 2019, in Dayton, Ohio. To say Kollie had *actual knowledge* of his friend, Connor Betts', plans says too much, as the evidence ascertained by the government to date would not support that conclusion (had it, and this case would have been much much different). To say, however, that Kollie bears no connection, says too little. Kollie ordered for Betts and had shipped to Kollie's residence (in order to help Betts thwart Betts' parents' wishes) a key component and accessories for the

1

gun Betts used in the shooting, Kollie helped Betts assemble the gun at Kollie's residence (outside the watchful eyes of Betts' parents) and then practiced firing the gun at a local shooting range (the assembly and practice shooting constituting the two separate illegal possessions by Kollie of the gun), and Kollie did all this (and his other criminal conduct) while regularly using marijuana and "micro-dosing" on psychedelic mushrooms.  When society needed a responsible, clear-thinking person in the room, it got a regular drug user with resulting impaired judgment.  Kollie's life-long choices brought him to this position.  He should be sentenced accordingly.

2.   Procedural History.

FBI agents arrested Kollie on August 9, 2019, and he made his initial appearance before this Court that same day.  He pled guilty on November 20, 2019, to a two-count Information charging him with (1) Possession of a Firearm by a Person who is an Unlawful User of or Addicted to any Controlled Substance, in violation of 18 U.S.C. § 922(g)(3), and (2) Making a False Statement or Representation in the Records Required to be Obtained by a Federal Firearms Dealer, in violation of l8 U.S.C. § 924(a)(1)(A).  Kollie remained in pretrial detention until on or about December 23, 2019, when he was released on bond.

Kollie has objected certain factual assertions made in the U.S. Probation Office's pre-sentence investigation report (namely, the ones connecting Kollie to the August 4 shooting) on *relevance* grounds, although he does not contest the *accuracy* of those assertions.  Nor does he contest the Sentencing Guidelines calculations.

The matter is ripe for adjudication of Kollie's objections (they should be

overruled) and then sentencing, currently scheduled for February 20, 2010, at 2:30 p.m.

3.  <u>Nature and Circumstances of the Offense</u>.

On May 9, 2019, Kollie purchased a Century Arms Micro Draco 7.62x39mm 30-round semi-automatic pistol ("Micro Draco"), from a local shooting range. (ECF No. 41, Plea Agreement at PageID 136.) In order to receive the Micro Draco, Kollie was required to complete an ATF Form 4473, entitled "Firearms Transaction Record." (*Id.*) The form contains this warning at the top of the first page:

> **WARNING: You may not receive a firearm if prohibited by Federal or State law. The information you provide will be used to determine whether you are prohibited from receiving a firearm. Certain violations of the Gun Control Act, 18 U.S.C. 921 et. seq., are punishable by up to 10 years imprisonment and/or up to a $250,000 fine.**

(*Id.*) The form contains this certification at the top of second page just before the signature line:

> **I certify that my answers in Section A are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. I understand that answering "yes" to question 11.a. if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I understand that a person who answers "yes" to any of the questions 11.b. through 11.i and/or 12.b. through 12.c. is prohibited from purchasing or receiving a firearm. I understand that a person who answers "yes" to question 12.d.1. is prohibited from receiving or possessing a firearm, unless the person answers "yes" to question 12.d.2. and provides the documentation required in 18.c. I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I further understand that the repetitive purchase of firearms for the purpose of resale for**

3

> **livelihood and profit without a Federal firearms license is a violation
> of Federal law. (*See Instructions* for Question 14.)**

(*Id.*) One of the questions on the form – question 11e – asks:

> Are you an unlawful user of, or addicted, to marijuana or any depressant,
> stimulant, narcotic drug, or any other controlled substance?

and contains its own warning:

> **Warning: The use or possession of marijuana remains unlawful
> under Federal law regardless of whether it has been legalized or
> decriminalized for medicinal or recreational purposes in the state
> where you reside**.

(*Id.*) Kollie lied on the form. He responded to question 11e by checking the box
"No," notwithstanding that he knew he was at the time an unlawful user of and
addicted to marijuana, narcotic drugs, and other controlled substances. (*Id.* at 136-
37.) Kollie's motive for the lie was clear: he knew he would not be able to obtain
the Micro Draco if he responded truthfully. (*Id.* at 137.) Kollie would own and
continually possess the Micro Draco until it was seized pursuant to a search
warrant on August 8, 2019. (*Id.*) At the time of its seizure, the Micro Draco was
loaded with 30 rounds of ammunition. (*Id.*)

Earlier, in March 2019, Kollie had ordered for Betts, with whom Kollie had
been friends for years, the upper receiver for the Anderson Manufacturing AM-15
BR 223/5.56 mm semi-automatic rifle ("AM-15") that Betts would months later use
to kill nine people and wound over a dozen more in the August 4, 2019 mass
shooting in Dayton, Ohio. (PSR at ¶ 24.) Kollie had the upper receiver shipped to
his residence. (*Id.*) Upon the upper receiver's arrival, Kollie assisted Betts – in

Kollie's residence -- with assembling the AM-15.  (PSR at ¶ 22.)  That was Kollie's first unlawful possession of the AM-15 as a drug user.  But, it was not his last, because the two would later in May 2019, practice firing the AM-15 – and the Micro Draco --– at a Dayton-area shooting range.  (PSR at ¶ 24.)

The upper receiver to the AM-15 was not all that Kollie obtained for his friend Betts.  In May 2019, Kollie purchased the 100-round double drum magazine that Betts would also later use in the August 4, 2019 shooting.  (PSR at ¶¶ 17, 22 and 24.)  And then, in July 2019, Kollie purchased the AR500 Armor brand body armor Betts would likewise use in the shooting.  (*Id*.)  Like the upper receiver for the AM-15, Kollie had both of these items shipped to *his* residence, rather than Betts'.  (PSR at ¶ 24.)

The question is why?  Why did Kollie purchase the upper receiver for the AM-15 for Betts, as opposed to just telling Betts "go buy it yourself?"  Why did Kollie help Betts assemble the weapon at *his* residence, as opposed to at Betts' residence?  Why did Kollie purchase the upper receiver, body armor, and 100-round double drum magazine for Betts and have them shipped to Kollie's residence, when Betts could have easily purchased them himself and had them shipped directly to him?  In short, why all the mystery, deceit, and sneaking around?

The answer can be found in one of the reasons why possession of firearms by drug users is criminalized under our laws:  *impaired judgment.  See United States v. Carter*, 750 F.3d 462, 465 (4th Cir. 2014) (upholding the constitutionality of 18 U.S.C. § 922(g)(3) against a *Heller*-based challenge, based, in part, on the "common-

5

sense" notion that drug use impairs judgment, and on the "substantial governmental objective of protecting the community from crime by keeping guns out of the hands of those impaired by their use of controlled substances."); *United States v. Hendrix*, No. 09-cr-56-bbc, 2010 U.S. Dist. LEXIS 33756 *7 (W.D. Wis. April 6, 2010) ("… it is obviously reasonable to prevent users of controlled substances from possessing guns. If they are under the influence of the substance, their judgment is impaired; …") Rather than pause, reflect, question, reach out for help, contact Betts' parents, sister, or friend, simply say "no," do something, anything, or otherwise exercise, good, sound, judgment, Kollie simply assented to Betts and went ahead and purchased for Betts the upper receiver to the AM-15, the body armor, and the double drum magazine, had them all shipped to his (Kollie's) place of residence (as opposed to Betts' residence or somewhere else), and helped Betts assemble the AM-15 at his (Kollie's) place of residence (as opposed to Betts' residence or somewhere else). Worse, he did so *in an effort to help Betts conceal these items from Betts' parents*. (*Id.*) In short, Kollie, an admitted regular user of marijuana and a regular (indeed, daily) user and grower of psychedelic mushrooms, exercised incredibly poor judgment in the nature and circumstances surrounding his possession of the AM-15 with Betts. He exhibited poor judgment in the manner in which he obtained the Micro Draco as well, namely, he lied. And, he exhibited poor judgment in his drug use to begin with.

In addition to the Micro Draco and the AM-15, Kollie possessed two other firearms while a regular drug user, namely, a black Taurus G2c 9mm handgun and

6

a Taurus 38 Special revolver. (ECF No. 41, Plea Agreement at PageID 137.) None of the four weapons at issue was possessed by Kollie exclusively for sporting or collection purposes. (ECF No. 41, Plea Agreement at PageID 137.) And, the AM-15 and Micro-Draco are *semiautomatic* firearms, in that they are capable of accepting a large capacity magazine. (*Id*.) In other words, these were not family hunting rifles.

Tellingly, when officers executed a search warrant on August 8, 2019, they found Kollie to be carrying on his body *both* the loaded Taurus .38 revolver *and* marijuana. (PSR at ¶ 21.) Officers also seized various narcotics and narcotics-related items, including a glass "bong," psychedelic mushrooms, and equipment and material used to grow the mushrooms. (*Id*.) Kollie would ultimately acknowledge that during the period he possessed the four firearms (the Micro Draco, the AM-15, and the two Tauruses), he was a regular user of marijuana and psychedelic mushrooms. (ECF No. 41, Plea Agreement at PageID 137.) In sum, while high as a kite or off in psychedelic land, Kollie carried around a loaded side arm, he owned another one, he owned and shot a Micro-Draco that he lied to obtain, and, in an effort to undercut Betts' parents, he slyly helped Betts obtain and hide accessories and parts for, and assemble, the AM-15 Betts would later all use in the mass shooting. Nothing good could ever come from it. And, nothing good did.

For his part, Kollie objects to the Court considering anything but the narrow, bare, facts behind the core elements of the two offenses of conviction. He asks this Court to ignore one of the mandates of 18 U.S.C. § 3553(a), namely, to consider the nature and circumstances of the offenses. The problem though is that criminal

7

conduct can rarely be cabined into neat and tidy silos, separated from the rest of the world, reality, or surrounding events.  Instead, criminal conduct, experience shows, tends to be intertwined with and connected to other conduct, all of which helps tell the complete story, paint the whole picture, and fill in the blanks.  This is undoubtedly why the Supreme Court has characterized the "nature and circumstances" factor to be considered under 18 U.S.C. section 3553 as "broad."  *See Gall v. United States*, 552 U.S. 38, 50 n. 6 (2007) ("The first factor is a broad command to consider 'the nature and circumstances of the offense and the history and characteristics of the defendant.' 18 U.S.C. § 3553(a)(1).").  No doubt this is also why Congress directed that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

Kollie did not just possess the AM-15 while a drug user, in cold isolation, without context, or on its own.  Quite the opposite.  The circumstances behind how he came into possession of the gun in the first place are telling, and tragic.  So, yes, on one hand, viewed in isolation and in a silo, the defendant possessed four firearms while a drug user and lied on a form about his drug use, and that's that.  But, on the other hand, when viewed with the nature and circumstances of that possession in mind, the offenses comes to life, and unfortunately, have a connection to the tragic loss thereof.  Kollie's objections should be overruled.

4.    <u>History and Characteristics of the Defendant</u>.

Kollie's history and characteristics are well outlined in U.S. Probation Office's pre-sentence investigation report. But, here too Kollie asks the Court to ignore a requirement of 18 U.S.C. § 3553(a), namely, to consider the history and characteristics of the defendant. As mentioned in the PSR, Kollie has a long history of drug use, including "hard" drugs, including with Betts. By definition, that *is* Kollie's "history." It cannot and should not be ignored.

5.    <u>The Kinds of Sentences Available and the Sentencing Guidelines</u>.

The Court has wide latitude in this case. The statutory penalties provide for up to 15 years imprisonment (10 years on count one, 5 years on count two, which may run concurrent or consecutive, at the Court's discretion). The Court may impose up to 3 years of supervised release to follow, subject to terms and conditions largely of the Court's choosing. A fine may be imposed of up to $500,000. The special assessment of $100 on each count and forfeiture apply.

As for the Sentencing Guidelines, no dispute exists. The parties concur with the U.S. Probation Office that the Sentencing Guidelines advise a custodial sentence of between 33 and 41 months, which is reduced from 46-57 months' imprisonment in light of Kollie's acceptance of responsibility and timely notification of an intent to plead guilty. His criminal history category is a Level II. Kollie was in pretrial detention from his time of arrest in early August until late December, so just over 4 ½ months.

The surest way for this Court's sentence to reflect the seriousness of the

9

offenses, to promote respect for the law, to provide just punishment for the offenses. to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant, is to impose a sentence within or above the Sentencing Guidelines range.

Kollie is in need of medical care, namely, drug treatment. The Bureau of Prisons has a number of residential and non-residential substance abuse programs potentially available, the eligibility for which depends on a number of factors.

6.    <u>Unwarranted Disparity</u>.

Kollie seeks to paint a picture of him having been singled out, citing statistics about case referrals and the like. Whatever the GAO Report purports to show, it clearly does not capture this District's practice, which has been to prosecute vigorously these types of cases when just, fair, and appropriate. For example, a quick search of the press releases posted to this Office's public website reveals a number of relatively recent cases similarly involving false statements on ATF 4473 form or similar conduct:

- https://www.justice.gov/usao-sdoh/pr/northeast-ohio-man-charged-buying-gun-convicted-felon-who-killed-westerville-police

- https://www.justice.gov/usao-sdoh/pr/four-charged-ohio-canada-gun-smuggling-ring

- https://www.justice.gov/usao-sdoh/pr/ohio-canada-gun-smuggling-ringleader-sentenced-prison

- https://www.justice.gov/usao-sdoh/pr/canfield-man-charged-conspiracy-illegal-distribution-weapons-were-resold-buyers-mexico

10

- https://www.justice.gov/usao-sdoh/pr/butler-county-man-charged-illegally-purchasing-firearm-used-murder-dea-task-force

And these related cases:

- https://www.justice.gov/usao-sdoh/pr/blanchester-man-convicted-selling-firearms-felon

- https://www.justice.gov/usao-sdoh/pr/cincinnati-man-sentenced-dealing-firearms-without-license

- https://www.justice.gov/usao-sdoh/pr/springfield-federal-firearms-licensee-pleads-guilty-falsifying-records

- https://www.justice.gov/usao-sdoh/pr/owner-clark-s-auto-sales-sentenced-dealing-illegal-explosives-and-falsifying-tax

But, in the end, this case is not about what was and was not referred for prosecution, accepted, or declined in *other* instances. *This case* was referred and accepted for prosecution. Nor is this case about statistics. This case is about *Ethan Kollie* and *his* lies, *his* drug use, *his* possession of four firearms, *his* impaired judgment, and *his* poor decisions. And, the "uniqueness" of this case actually cuts the other way. The Sentencing Guidelines range of 33-41 months' imprisonment contemplates a "garden-variety" drug-user in possession and false statement case. As noted above, this, unfortunately, is anything but a "garden variety" case.

11

7.     <u>Conclusion</u>.

For the foregoing reasons, the United States respectfully submits that a sentence within the advisory Sentencing Guidelines range would be sufficient but not more than necessary, to achieve the goals of sentencing as set forth in 18 U.S.C. § 3553(a).

                                        Respectfully submitted,

                                        DAVID M. DEVILLERS
                                        United States Attorney

                                        <u>s/Vipal J. Patel</u>
                                        VIPAL J. PATEL (CA 156212)
                                        First Assistant United States Attorney
                                        200 West Second Street, Suite 600
                                        Dayton, Ohio 45402
                                        Office: (937) 225-2910
                                        Fax: (937) 225-2564
                                        vipal.patel@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this pleading was filed with this Court on this 13th day of February 2019, a process which automatically provides an electronic copy to all counsel of record.

<u>s/Vipal J. Patel</u>
VIPAL J. PATEL (156212 CA)
First Assistant United States Attorney

13